# ROBERTSON v. STATE.

No. A-11508. April 9, 1952.

(243 P. 2d 367.)

Joe Young, Chandler and A. W. Mauldin, Healdton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, William Carroll Robertson, was charged by an information filed in the county court of Lincoln county with the offense of driving an automobile on the public highway while under the influence of intoxicating liquor; was tried; convicted; and sentenced to serve 30 days in the county jail and pay a fine of $300, and has appealed.

The prosecution was instituted as a result of a collision between defendant's automobile and a Greyhound bus, which occurred shortly after midnight on April 4, 1950, on U. S. Highway No. 66 between Davenport and Stroud.

The principal assignment of error is that the trial court admitted hearsay and prejudicial testimony over the objection of counsel for defendant.

Harry Hewlett, driver of the bus, testified that he was driving the bus from Oklahoma City to Tulsa; that four or five miles from Davenport he met·a car coming around the curve, this car came over on the wrong side of the road and sideswiped the bus, which caused the car to careen into a ditch and on into a field. The witness testified that he stopped the bus and interviewed each of the passengers to see whether any of them had been injured; that about 15 minutes later he went back to where defendant's car had stopped and saw the defendant lying on the floor of the car; there was a strong odor of alcohol about his person; that the defendant said, "Get me to a doctor"; that a friend of defendant came along in another car about that time and defendant was loaded in the car and taken toward Stroud.

Two highway patrolmen also testified for the state. They testified that they arrived at the scene of the accident about 45 minutes after it allegedly occurred.

They were notified that defendant had been taken to the hospital at Stroud. Patrolman McIntosh remained at the scene of the collision, while Patrolman Morris went to the hospital to see the defendant. Morris testified that he saw the defendant in the hospital and defendant seemed to be in a drunken condition.

It was at testimony given by Patrolman Morris that the assignment of error hereinabove stated was directed. The record discloses that the highway patrolman was asked whether he secured permission of the doctor to take Robertson from the hospital, to which patrolman replied affirmatively over objection of counsel for defendant. The witness was then asked, "What kind of permission did you have?" to which objection was interposed by counsel and objection overruled, to which the witness answered, "The doctor said he wasn't injured and I could take him". After the objection had been made the record discloses the following questions and answers were given:

"Q. You say the doctor said that? A. Yes, sir. He said he wasn't injured. He said he couldn't find anything, he was just inebriated. Q. You say the doctor said go ahead and take him? A. He did. Q. He released him to you? A. He did verbally. Q. Did you take the boy with you? A. I certainly did. Q. Did he get up and walk out? A. I had to assist him very much. I practically carried him. Q. Did he appear to be in pain? A. No he didn't. He appeared to be in a drunken condition. Q. Did he complain about his injuries? A. No. Q. Did he object to the doctor's releasing him? A. No. Q. Did you observe any type of injury on him at the time? A. No. Q. You didn't notice that he was injured any? A. No, the doctor said he was not. Mr. Mauldin: Object to what the doctor said, hearsay. Court: Objection overruled. Mr. Mauldin: Exceptions. Court: Exceptions allowed. * * * Q. Did he give you a written release? A. He did not. He gave me a verbal release. Q. If this man had been injured would he have been in anything like the condition you say he was in? A. If he had been injured the doctor wouldn't have released him to me. Q. You don't know whether he was injured or not? A. I took the doctor's word only. Q. Did the man tell you he was injured? A. No. * * * Q. You didn't know whether he was injured? A. The doctor told me he wasn't."

All of this testimony concerning what the doctor told the witness was hearsay. It is true, as pointed out by the Attorney General, that a part of the questions were asked and answers given without objection being interposed, but counsel did object to such evidence when the inquiry was first started and made two other objections during the course of the inquiry, all of which were overruled. We cannot perceive any basis at all on which a trial judge could admit such hearsay evidence. The doctor himself would have been an incompetent witness to have testified concerning the condition of his patient. 12 O. S. 1951 § 385, paragraph 6. Clapp v. State, 73 Okla. Cr. 261, 120 P. 2d 381. Certainly if the doctor had been unable to give testimony as direct evidence a third person testifying from hearsay could not testify concerning the same subject.

The defendant herein testified in his own behalf and denied being drunk, although admitting that he drove the car in question. He stated that he was returning from a dance at Stroud and that while he was on the curve the lights of the bus blinded him to where he could not see. The defendant denied that he had been drinking any kind of intoxicants. He said he was knocked out by the collision and did not remember anything that happened until the next morning. He received a knot on the head and also an injured wrist and nose. The doctor submitted a bill in the amount of $10 for treatment given to him for his injuries. In addition to his testimony, several other witnesses testified in his behalf that they were with the defendant at the dance until the dance ended shortly after midnight and that defendant had not been drinking intoxicating liquor.

Under such a state of the record we cannot say that the defendant has had a fair and impartial trial. The evidence of guilt is not so overwhelming that we can treat this manifestly improper admission of hearsay evidence as harmless error.

This court has held in many cases that where hearsay evidence has been received, which reasonably contributed to the verdict of guilty, reception of such evidence is ground for reversal. Robbins v. State, 39 Okla. Cr. 289, 264 P. 841; Peavler v. State, 47 Okla. Cr. 395, 288 P. 610.

Solely because of the gross error of the trial judge in permitting the county attorney to introduce hearsay evidence as to statements made by the physician for the defendant concerning his condition, the judgment of the county court of Lincoln county is reversed and the case remanded for a new trial.

BRETT, P. J., and POWELL, J., concur.